1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

STEVEN KLUG,

11                              Plaintiff,

12          v.

13   CLARK COUNTY, *et al.*,

14                              Defendants.

CASE NO. 3:19-cv-06031-BHS-JRC

AMENDED REPORT AND
RECOMMENDATION

NOTED FOR: March 19, 2021

15

16          The District Court has referred this matter brought under 42 U.S.C. § 1983 to the

17   undersigned.  *See* Dkt. 8; *see also* 28 U.S.C. § 636(b)(1); Local Magistrate Judge Rules 1, 3, and

18   4.  Before the Court is defendants' motion for summary judgment dismissal of plaintiff's claims.

19   Dkt. 30.

20          This case presents a troublesome clash between an overbearing and combative private

21   citizen and an even more overbearing and confrontational law enforcement officer over a simple,

22   and unnecessary, vehicle equipment citation.  The law, however, prevents plaintiff's claims

23   related to the citation from going forward because after a state court found that plaintiff

24

committed the infraction, plaintiff chose to pay the $228 fine, rather than pursue his legal remedies to potentially have it dismissed. Dkt. 31-7, at 1.  Even more unfortunately, the matter did not end there and escalated over the course of several weeks, to the point where people's lives were threatened and guns were drawn.  It should have never gotten that far.  All sides are to blame.  But only one small piece should be resolved in this court.

Taking the facts in the light most favorable to plaintiff, it all began on August 23, 2017, when plaintiff, a white male, stopped for fuel in the early morning.  *See* Dkt. 31-6, at 2; Dkt. 35-3, at 1.  He was looking under the hood of his car, when defendant deputy John Phane[1] of the Clark County Sheriff's Department walked up to plaintiff and asked if he needed assistance. Dkt. 31-6, at 2.  Plaintiff, for reasons known only to him, chose to respond with a vulgar epitaph telling defendant Phane to—in essence—mind his own business.  Dkt. 31-1, at 6–7.

Defendant Phane withdrew but did not retreat.  Instead, he parked his vehicle across the street in a dark corner.  Dkt. 31-2, at 7.  Phane waited for plaintiff to drive away and then followed him.  Dkt. 31-2, at 10.  Although Phane later stated that he would not have followed plaintiff if "nothing occurred at the gas station," Phane followed plaintiff out of the gas station and noticed that that plaintiff's vertical bicycle rack might obscure part of his license plate.  *See* Dkt. 31-2, at 10–11; Dkt. 36-2, at 26.  So, Phane activated his emergency overhead lights and pulled plaintiff to the side of the road, where he conducted an inspection of plaintiff's vehicle. He wrote plaintiff a ticket for an obscured license plate—a citation he otherwise never issued from 2017 to 2019.  Dkt. 36-2, at 53, 63.  Plaintiff was not happy.

---

[1] Plaintiff's complaint lists defendant "Jack Phan," but defendants assert that the proper spelling of this defendant's surname is "Phane."  Dkt. 30, at 10 n.1.

1   But things did not end there.  A few weeks later, on September 7, 2017 (Dkt. 31-1, at 2),

2   defendant deputy Dan Brown, who was friends with and a co-worker of defendant Phane (Dkt.

3   36-2, at 136), was patrolling plaintiff's neighborhood around 2:00 a.m.  Dkt. 31-1, at 19.  That

4   morning, plaintiff left his house, took out the trash, and then got into his car to go exercise at his

5   local gym, only to find himself surrounded by several patrol cars, all with their emergency lights

6   activated.  Dkt. 31-1, at 19.  Defendant Brown states that he was investigating yelling that he

7   purportedly heard somewhere in the neighborhood—although no one else corroborates this

8   explanation and plaintiff states that there was no noise at all that morning.  Dkt. 36-1, at 2.  After

9   detaining plaintiff for several minutes, shining a flashlight in his direction, and conducting a

10   search of plaintiff's vehicle, the officers withdrew.  Dkt. 36-2, at 145.  The whole time this was

11   occurring, defendant Phane was in another vehicle just a block away, monitoring the events on

12   his vehicle's computer.  Dkt. 36-2, at 27.  Again, plaintiff was not happy.

13   Plaintiff's discontent with law enforcement had not abated, but only increased.  After

14   unsuccessfully disputing the ticket he had received from defendant Phane, plaintiff posted a

15   check to the local District Court to pay for his citation in an envelope containing a strangely

16   colored powder.  Plaintiff set some sort of deadline and wrote that this was a "final opportunity"

17   for the District Court to return his money.  Dkt. 31-1, at 22.

18   It turns out the powder was harmless but, understandably, considered a threat.  So,

19   defendant deputy Jared Stevens, who was generally aware of plaintiff's previous encounters with

20   law enforcement and was advised that plaintiff regularly carried knives, arrested plaintiff on

21   charges of intimidating a public servant.  Defendant Stevens conducted a "high-risk" vehicle

22   stop, with his gun drawn to make the arrest, and, according to plaintiff, pointed his gun at

23   plaintiff during that arrest.  Dkt. 31-11, at 3; Dkt. 36-1, at 3.  Several other units also arrived at

24

the scene. Dkt. 31-11, at 4. Plaintiff was ordered to exit the vehicle with his hands up. Dkt. 31-11, at 5. Fortunately, this encounter ended peacefully. Plaintiff was handcuffed, arrested, and jailed overnight until a Clark County superior court judge released him based on a finding of no probable cause to arrest. *See* Dkt. 36-1, at 3.

This case followed.

Plaintiff brings claims against Phane, Brown, and Stevens, as well as Clark County and the Clark County Sheriff (Chuck Atkins). Plaintiff alleges that on these three separate occasions, defendants violated his First, Fourth, and Fourteenth Amendment rights and that their actions constituted the torts of outrage and false imprisonment/false arrest.

Because plaintiff paid the fine that resulted from his infraction and has not shown that the infraction has been invalidated and due to a peculiarity in federal law referred to as the "*Heck*[2] bar," all claims against defendant Phane should be dismissed without prejudice, regardless of Phane's alleged improper motive in writing the ticket. Because the facts as alleged by plaintiff create a material issue of fact regarding the events leading to plaintiff's 2:00 a.m. encounter with law enforcement, all claims against defendant Brown should go forward. As to defendant Stevens, even taking as true that he pointed his gun at plaintiff when arresting him, Stevens' actions did not violate clearly established law and plaintiff fails to come forward with evidence from which a trier of fact could find in his favor on the remaining claims against Stevens. All claims against him should be dismissed, as well. Plaintiff fails to present evidence that would meet the applicable legal standards against the remaining defendants. Therefore, they, too, should be dismissed.

---

[2] *Heck v. Humphrey*, 512 U.S. 477 (1994).

**PROCEDURAL BACKGROUND**

Plaintiff filed his complaint in October 2019.  Dkt. 1; *see also* Dkt. 5 (corrected complaint).  Defendants now move for summary judgment dismissal of plaintiff's claims against them and rely on materials including defendants' declarations (Dkts. 32, 34, 35).  Dkt. 30. Plaintiff has filed his response and supporting evidence (Dkt. 36), and the matter is ripe for decision.  The Court references the parties' evidence in support of their briefing as necessary throughout the discussion herein.

**DISCUSSION**

**I.  Legal Standard**

Summary judgment is appropriate if a moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Weighing of evidence and drawing legitimate inferences from facts are jury functions and not the function of the court.  *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).  If the material evidence is in genuine dispute, a motion for summary judgment dismissal should be denied.

To prevail on claims under § 1983, plaintiff must show "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  And, for damages claims, "government officials performing discretionary functions [are

1   entitled to] a qualified immunity, shielding them from civil damages liability as long as their

2   actions could reasonably have been thought consistent with the rights they are alleged to have

3   violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted).

4   **II.  Preliminary Matters**

5   As a preliminary matter, the Court notes that defendants raise two arguments in their

6   reply brief regarding evidence.  *See* Dkt. 40, at 4.  First, defendants argue that the Court cannot

7   rely on plaintiff's deposition testimony that is not part of the record.  *See* Dkt. 40, at 4.  The

8   Court does not refer to, or rely on, any evidence outside the record provided by the parties

9   related to the summary judgment motion in rendering this Report and Recommendation.  *See*

10  Fed. R. Civ. P. 56(c)(1)(A).

11  Second, defendants argue that the Court should not address materials that are attached to

12  plaintiff's response that plaintiff does not cite to or reference.  Dkt. 40, at 5.  The Court declines

13  to strike documents merely because they are uncited by plaintiff and will instead rely on all

14  admissible and relevant materials of record, in accordance with Federal Rule of Civil Procedure

15  56(c)(3).

16  The Court turns to the merits of the parties' arguments, beginning with their arguments

17  regarding plaintiff's claims under 42 U.S.C. § 1983.

18  **III.  § 1983 Claims**

19  **A.  Defendant Phane**

20  Plaintiff alleges that defendant Phane violated the First and Fourth Amendments related

21  to the traffic stop and infraction of plaintiff in August 2017.  Dkt. 5, at 28–31.  Defendants argue

22  that these claims should be dismissed on summary judgment because, among other things, they

23

24

1  are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Dkt. 30, at 27–36.  The Court agrees

2  with defendants and recommends dismissal of these claims without prejudice.

3        It is an established principle of federal law that—

4        in order to recover damages for allegedly unconstitutional conviction or
5        imprisonment, or for other harm caused by actions whose unlawfulness would
         render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
6        conviction or sentence has been reversed on direct appeal, expunged by executive
         order, declared invalid by a state tribunal authorized to make such determination,
7        or called into question by a federal court's issuance of a writ of habeas corpus, 28
         U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or
         sentence that has not been so invalidated is not cognizable under § 1983.

8

9  *Heck*, 512 U.S. at 486–87.  This principle from *Heck* can apply to claims that an arrest or

10  infraction was retaliatory, in violation of the First Amendment.  *See, e.g.*, *Smith v. Ball*, 278 F.

11  App'x 739, 741 (9th Cir. 2008); *Berger v. Brandon*, No. 208CV01688GEBEFB, 2008 WL

12  5101338, at *1 (E.D. Cal. Dec. 3, 2008) (concluding that *Heck* barred a retaliation claim that an

13  officer stopped plaintiff without probable cause).  It also applies to Fourth Amendment claims.

14  *E.g., Middleton v. Santa Barbara Police Dep't*, No. CV1509818SVWAGR, 2016 WL 6902098,

15  at *3 (C.D. Cal. July 11, 2016), *report and recommendation adopted*, No. CV 15-9818-SVW

16  (AGR), 2016 WL 6902462 (C.D. Cal. Nov. 22, 2016).

17        Contrary to plaintiff's argument, this principle applies to traffic infractions not resulting

18  in incarceration with equal force as it applies to sentences of imprisonment.  *See Dauven v.*

19  *Oregon*, No. CIV.01-173-JE, 2001 WL 34736645, at *1 (D. Or. May 18, 2001) (dismissing

20  claims regarding a traffic infraction under *Heck*), *aff'd*, 44 F. App'x 255 (9th Cir. 2002); *Kenney*

21  *v. City of S.D. & Fed. & Private Contractor Intelligence Cmty.*, No. 13CV248 WQH (JLB),

22  2016 WL 1223339, at *7 (S.D. Cal. Mar. 29, 2016) (ruling that damages for traffic stop and

23  citation were *Heck*-barred); *see also Moorish Science Temple of Am. v. State of Cal.*, No.

24

218CV2093JAMEFBPS, 2020 WL 4547169, at *1 (E.D. Cal. Aug. 6, 2020), *report and recommendation adopted* (Sept. 1, 2020); *Kelly v. Marlow*, No. CIVS-09-2749FCDCMK, 2010 WL 529497, at *1 (E.D. Cal. Feb. 12, 2010), *report and recommendation adopted*, No. CV S-09-2749-FCD-CMK, 2010 WL 11579800 (E.D. Cal. Mar. 19, 2010).  Although the Ninth Circuit has not addressed this matter in a published decision (*but see Dauven*, 44 F. App'x 255), the Ninth Circuit has held that *Heck* barred a plaintiff's challenge to an infraction, where the plaintiff had never sought to invalidate the infraction.  *Lyall v. City of L.A.*, 807 F.3d 1178, 1183 & n.12 (9th Cir. 2015).

Plaintiff cites *Hill v. Snyder*, 878 F.3d 193 (6th Cir. 2017), and *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), as authority that *Heck* does not bar the claims here.  In *Hill*, the Sixth Circuit held that *Heck* did not apply to a claim asserting deprivation of good time credits and opportunities for rehabilitative programming for prisoners.  878 F.3d at 210–11.  This was because under the circumstances, neither restoration of good time credits nor better rehabilitative opportunities would shorten prisoners' sentences.  *Id.*  In contrast, this matter involves neither good-time credits nor an issue of whether the requested relief would shorten a criminal sentence.

The other case cited by plaintiff, *Martin v. City of Boise*, supports dismissal of plaintiff's claims here.  In *Martin*, the Ninth Circuit referred to a limited exception from *Heck*, where a former prisoner had no practical opportunity to challenge his conviction or sentence via a petition for habeas corpus, because his sentence expired and rendered the habeas petition moot.  920 F.3d at 612–13.  The Ninth Circuit explained that this very limited exception from *Heck* does not apply "where a plaintiff had no practical opportunity to pursue federal habeas relief while detained . . . [but] *could have sought invalidation of the underlying conviction via direct appeal or state post-conviction relief, but did not do so*."  *Id.* at 613 (emphasis added).  That is

1   more similar to the situation here—plaintiff could have sought invalidation of his traffic citation

2   in state court and yet did not do so.

3         Thus, plaintiff's First and Fourth Amendment claims against defendant Phane are barred

4   by *Heck* and should be dismissed without prejudice on summary judgment.  *See Trimble v. City*

5   *of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (per curiam) (dismissals under *Heck* are without

6   prejudice).

7   **B.  Defendant Brown**

8         Plaintiff also brings claims of retaliation and unlawful detention in violation of the First

9   and Fourth Amendments against defendant Brown.  These claims are based on plaintiff's

10   September 7, 2017 interaction with Brown, when plaintiff claims that Brown detained plaintiff in

11   the middle of the night in his driveway without a reasonable suspicion and in retaliation for

12   plaintiff's speech to Brown.  *See* Dkt. 5, at 13–14, 28–31.  Unlike the incident with Phane,

13   however, Brown's alleged actions did not result in any charges against plaintiff.  Thus, no

14   infraction or conviction is implicated, and *Heck* does not bar the federal claims against Brown.

15         Nonetheless, defendants assert that even taking the facts in the light most favorable to

16   plaintiff, he has failed to show actions violating the Fourth and First Amendments and that

17   qualified immunity shields defendant Brown from liability.  Dkt. 30, at 38–40, 51.  Defendants'

18   arguments are unpersuasive because plaintiff has provided evidence that creates at least a

19   material issue of fact.  Therefore, summary judgment should be denied, inasmuch as defendants

20   request dismissal of the federal claims against defendant Brown.

21   **1.  Fourth Amendment and Qualified Immunity**

22   **a.  Legal Principles**

23

24

1    The parties do not dispute that Brown's actions are analyzed under the standard set forth

2    in *Terry v. Ohio*, 392 U.S. 1 (1968), for brief detentions of an individual for investigatory

3    reasons.  *See* Dkt. 30, at 37; Dkt. 36, at 25, 38.  Assessing an officer's conduct under *Terry* is an

4    inquiry measured by "an objective standard[.]"   Thomas v. Dillard, 818 F.3d 864, 876 (9th Cir.

5    2016), *as amended* (May 5, 2016)

6    *Terry* allows an officer to "conduct a brief, investigatory stop when the officer has a

7    reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S.

8    119, 123 (2000) (citing *Terry*, 392 U.S. at 30).  "While 'reasonable suspicion' is a less

9    demanding standard than probable cause and requires a showing considerably less than

10   preponderance of the evidence, the Fourth Amendment requires at least a minimal level of

11   objective justification for making the stop."  *Id.*  "The officer must be able to articulate more

12   than an 'inchoate and unparticularized suspicion or hunch' of criminal activity."  *Id.* at 123–24

13   (quoting *Terry*, 392 U.S. at 27 (internal quotation omitted)).

14   When assessing whether qualified immunity applies, the Court considers whether there

15   was a constitutional violation and whether the right violated was "clearly established" at the time

16   of the alleged violation.  *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th

17   Cir. 2019).  A right is clearly established if "every reasonable official would have understood

18   that what [the official] is doing violates that right."  *Id.* (internal quotation omitted).  This inquiry

19   must be undertaken in light of the specific context of the case and not as a broad general

20   proposition.  *Id.* (internal citation omitted).  The qualified immunity inquiry is objective:  what

21   would a reasonable official have understood the law to be at the time?  *See id.*  Here, granting the

22   summary judgment motion on the basis of qualified immunity would be appropriate only if the

23   facts taken in the light most favorable to plaintiff do not violate a clearly established right.  *See*

24

1    *id.* at 313 ("[T]he District Court's denial of petitioner's summary judgment motion necessarily

2    determined that certain conduct attributed to [defendant] (which was controverted) constituted a

3    violation of clearly established law. . . .").

4         A clearly established right is one that was settled law because of either controlling

5    authority or a robust consensus of persuasive authority. *District of Columbia v. Wesby*, __ U.S.

6    __, 138 S. Ct. 577, 589–90 (2018).  Whether or not a constitutional right is "clearly established"

7    is a question of law for a judge to decide. *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).  "A

8    clearly established right is one that is 'sufficiently clear that every reasonable official would have

9    understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308

10   (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Although there need not be a

11   case directly on point, "'existing precedent must have placed the . . . constitutional question

12   beyond debate.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

13   (2011)).

14                                          **b.  Discussion**

15        For his part, defendant Brown claims that he was driving in plaintiff's neighborhood

16   early in the morning on September 7, 2017, when he heard what he thought was a domestic

17   disturbance.  Brown detained plaintiff, the only person whom defendant Brown observed in the

18   area.  *See* Dkt. 31-9, at 16; Dkt. 34, at 2.   Defendant Brown states in his deposition that he had a

19   reasonable suspicion of criminal activity based on "the hour of the day" (approximately 2 a.m.),

20   that he heard "someone yell" in plaintiff's neighborhood," and that he believed there might be a

21   "domestic disturbance occurring."  Dkt. 31-9, at 10.  Defendant Brown also stated that plaintiff's

22   neighborhood was "a little bit higher of [a] crime area[.]"  Dkt. 31-9, at 9.

23

24

1    Specifically, defendant Brown claims that he drove past plaintiff's house (approximately

2    where he believed the sound originated), turned around, and then, when driving back, observed

3    plaintiff getting into his car.  Dkt. 31-9, at 12.  Plaintiff was in the general area of where

4    defendant Brown believed he had heard someone yelling approximately four minutes earlier.

5    *See* Dkt. 31-9, at 16.  Defendant Brown also claims to have witnessed plaintiff running to his

6    vehicle from his house.  Dkt. 34-1, at 7.

7    However, plaintiff's own account of what happened that night contradicts defendant

8    Brown's account in several crucial respects.  Plaintiff states that his neighborhood "does not

9    have high crime" and that if someone had been yelling in the area, he would have heard it, but

10   that he neither heard nor made any loud noise that morning.  Dkt. 36-1, at 1–2.  Plaintiff also

11   denies running to his vehicle.  Dkt. 36-1, at 24.  And as noted above, plaintiff provides evidence

12   that Phane and Brown were friends and coworkers.  *See* Dkt. 36-2, at 136.  Plaintiff argues that

13   because defendant Brown was friends with Phane—who was waiting around the corner at the

14   time of the incident—and based on this incident happening within weeks of the traffic stop, it is

15   clear that Brown was retaliating against plaintiff for his interaction with Phane.

16   It is the role of a jury to determine whether Brown heard yelling and investigated or

17   whether, as plaintiff contends, Brown invented a potential domestic disturbance as a justification

18   to harass plaintiff.  *See* Dkt. 36, at 38.  Taking the facts in the light most favorable to plaintiff,

19   defendant Brown did not hear any noises and was not in a high crime area, plaintiff did not run to

20   his car, and defendant Brown stopped plaintiff because plaintiff happened to be visible, near his

21   home, at 2 a.m.  And the circumstantial evidence presented by plaintiff could lead a reasonable

22   juror to conclude that this was not in investigation of a domestic dispute, but retaliation for the

23   incident involving plaintiff and Phane—Brown's co-worker and friend.  If the jury agrees at trial,

24

1   the objective findings would fall below even the low bar of "reasonable suspicion" of criminal

2   activity.

3          Plaintiff has presented evidence regarding defendant Brown's improper motive.  But,

4   frankly, defendant Brown's motive is irrelevant when analyzing plaintiff's Fourth Amendment

5   claim.  The Supreme Court has clearly held that the Fourth Amendment is not violated by an

6   arrest that is done by a police officer in retaliation for protected conduct so long as there is

7   probable cause for the arrest:

8          [W]hen reviewing an arrest [under the Fourth Amendment], we ask "whether the
           circumstances, viewed objectively, justify [the challenged] action," and if so,
9          conclude "that action was reasonable *whatever* the subjective intent motivating the
           relevant officials." [Citation omitted.]  A particular officer's state of mind is simply
10         "irrelevant," and it provides "no basis for invalidating an arrest."   [Citation
           omitted.]

11

12   *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019).  There is no reason to distinguish between a

13   *Terry* stop, such as the one conducted by defendant Brown, and arrests when applying this rule.

14   *See Thomas*, 818 F.3d at 876 (explaining that the standard for judging detentions under *Terry* is

15   also objective).

16          Nevertheless, even setting aside evidence regarding defendant Brown's alleged motive,

17   the other, objective evidence discussed above, when viewed in the light most favorable to

18   plaintiff, could lead a reasonable juror to conclude that defendant Brown did not have a

19   reasonable suspicion to detain plaintiff, which would violate plaintiff's Fourth Amendment

20   rights.

21          Since plaintiff has shown a constitutional violation, the Court turns to the other prong of

22   the qualified immunity analysis—whether a reasonable officer would have understood that a

23   *Terry* stop under these circumstances violated clearly established law.  Although time of day is a

24

AMENDED REPORT AND RECOMMENDATION - 13

relevant consideration when considering whether there was reasonable suspicion for a *Terry* stop (*e.g.*, *United States v. Mattarolo*, 209 F.3d 1153, 1157 (9th Cir. 2000)), the Court is unaware of any authority that presence outdoors in a residential neighborhood at 2 a.m. is sufficient, alone, to create a reasonable suspicion of criminal activity.  Indeed, courts in this circuit that have discussed time of day have only found a reasonable suspicion to justify a *Terry* stop where the time of day was coupled with other factors creating a reasonable suspicion.  *See, e.g.*, *Friedman v. Pettit*, No. CVS031318RLHPAL, 2005 WL 8161500, at *4 (D. Nev. Apr. 13, 2005) (reasonable suspicion of criminal activity when a car was parked in a closed business's access driveway late at night, where officer had never observed a car in that driveway); *United States v. Cross*, No. 3:09-CR-002-TMB-JDR, 2009 WL 1444028, at *3 (D. Alaska May 1, 2009) (reasonable suspicion for detention when late at night, an officer observed a person who had recently been arrested for prostitution appearing to solicit clients), *report and recommendation adopted*, 2009 WL 1444087 (May 20, 2009), *aff'd*, 421 F. App'x 720 (9th Cir. 2011); *see also Amili v. City of Tukwila*, 31 F. Supp. 3d 1274, 1280 (W.D. Wash. 2014) (no reasonable suspicion where plaintiffs were walking in a quiet area, late at night, wearing wrinkled clothing, and were not on the sidewalk).  Although the Court is not aware of any published Ninth Circuit case addressing the precise situation presented in this matter, the Court need not identify an identical prior action, so long as existing law made the unlawfulness of defendant Brown's alleged actions apparent at the time.  *See, e.g.*, *Anderson*, 483 U.S. at 640.

Moreover, absent binding precedent, the Court may look to precedent from other federal circuit courts. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).  Notably, at the time of Brown's actions, the Fifth, Sixth, and Tenth Circuits had each indicated that time of day alone is inadequate to create a reasonable suspicion.  *Vasquez v. Lewis*, 834 F.3d 1132, 1137 (10th Cir.

1    2016); *United States v. See*, 574 F.3d 309, 314 (6th Cir. 2009); *United States v. Samaguey*, 180
2    F.3d 195, 198 (5th Cir. 1999).

3    　　In short, the Court concludes that taking the facts in the light most favorable to plaintiff, a
4    reasonable officer would have known that briefly detaining plaintiff based solely on the time of
5    day and plaintiff's presence outdoors violated clearly established law.  Summary judgment
6    dismissal of the Fourth Amendment claim against defendant Brown should be denied.

7    **2.  First Amendment and Qualified Immunity**

8    　　As noted, plaintiff also asserts a First Amendment claim against defendant Brown for
9    allegedly conducting the *Terry* stop as retaliation for plaintiff's disrespect toward defendant
10   Phane.  The elements of this retaliation claim are that (1) Brown's conduct "would chill or
11   silence a person of ordinary firmness from future First Amendment activities," and (2) Brown's
12   desire to chill speech was a "but-for cause" of the adverse action.  *See Sharp v. Cty. of Orange*,
13   871 F.3d 901, 919 (9th Cir. 2017).

14   　　Defendants do not dispute that a retaliatory *Terry* stop would chill or silence a person of
15   ordinary firmness from future First Amendment activities.  *See* Dkt. 30, at 40.  Instead,
16   defendants assert that plaintiff has not presented direct evidence to dispute Brown's claim that at
17   the relevant time, Brown did not know about the earlier interaction between plaintiff and Phane.
18   *See* Dkt. 30, at 40.

19   　　Regarding this element, however, the Ninth Circuit has not required direct evidence that
20   desire to chill speech was the but-for cause of the action.  The Ninth Circuit has held that
21   evidence that the retaliation happened soon after the protected speech and that the alleged
22   retaliator offered pretextual reasons for the adverse action can satisfy this element.  *See*
23   *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).  Here, there is
24

1    evidence that the *Terry* stop happened with a few weeks of plaintiff's interaction with defendant

2    Phane.  *See* Dkt. 35, at 2; Dkt. 34-1, at 7.  And, as noted above, plaintiff has come forward with

3    his own statements that defendant Brown's cited reasons for the *Terry* stop (that he heard yelling,

4    observed plaintiff running, and was in a high-crime area) were pretextual.  Moreover, *McCollum*

5    does not hold that these factors are exclusive, and plaintiff has also come forward with other

6    circumstantial evidence that the detention was retaliatory.  This includes that Phane was present

7    around the corner during the detention, that officers shook plaintiff's bicycle rack, and that

8    Brown and Phane were friends.  *See* Dkt. 36-2, at 27; Dkt. 36-1, at 2. These factual conflicts are

9    for a jury to decide, not this Court on summary judgment.

10        As to whether the law was clearly established that defendant Brown's alleged actions

11   would violate the First Amendment, the Ninth Circuit has held that it is clearly established that a

12   police officer retaliating against a citizen for perceived disrespect toward police by detaining that

13   person violates the First Amendment.  *E.g., Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1377

14   (9th Cir. 1990) (traffic stop); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1022 (9th Cir.

15   2015) (detention and arrest).  Defendants' argument to the contrary is premised on the facts in

16   the light most favorable to them—not to plaintiff—and is not persuasive.  *See* Dkt. 30, at 40.

17        Therefore, the Court should also deny the summary judgment motion inasmuch as

18   defendants seek dismissal of the claim that defendant Brown retaliated against plaintiff.

19        **C.  Defendant Stevens**

20        Plaintiff asserts that defendant Stevens' arrest of plaintiff violated the First and Fourth

21   Amendments because Stevens did not have probable cause and was retaliating against plaintiff

22   and because Stevens used excessive force during the arrest.  *See* Dkt. 1, at 20, 28–32.  Plaintiff

23

24

1    also alleges that defendant Stevens failed to disclose known exculpatory evidence.  Dkt. 1, at 32.

2    Defendants seek summary judgment dismissal of these claims.  *See* Dkt. 30, at 40–47.

3         Regarding plaintiff's Fourth Amendment wrongful arrest claim against defendant

4    Stevens, and unlike plaintiff's similar claim against defendant Brown for wrongful detention,

5    plaintiff has not produced any evidence that contradicts the basic facts surrounding defendant

6    Stevens' arrest of plaintiff.  It is undisputed that plaintiff sent an envelope to the District Court

7    that contained a suspicious powder and a note from plaintiff that could be considered a veiled

8    threat.  Stevens was generally aware of plaintiff's previous encounters with law enforcement—

9    enough to know that plaintiff was hostile to law enforcement.  Based on this objective evidence,

10   and regardless of motive, the question becomes whether Stevens had probable cause to make the

11   arrest.    This Court concludes that there was.  The Court similarly concludes that because

12   plaintiff has failed, as a threshold matter, to show an absence of probable cause for his arrest, his

13   First Amendment claims fail, as well.

14             **1.  Fourth Amendment:  Probable Cause for Arrest**

15                  **a.  Legal Principles**

16        "'A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

17   Amendment, provided the arrest was without probable cause or other justification.'"  *Lacey v.*

18   *Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty. of S.F.,* 266

19   F.3d 959, 964 (9th Cir. 2001)).  The analysis of whether an officer had probable cause is purely

20   objective:  the Supreme Court has explained that "[s]ubjective intentions play no role in

21   ordinary, probable-cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S. 806,

22   813 (1996).  "Probable cause exists when there is a fair probability or substantial chance of

23

24

1  criminal activity." *United States v. Pataya Soriano,* 361 F.3d 494, 505 (9th Cir. 2004) (quoting

2  *United States v. Bishop,* 264 F.3d 919, 924 (9th Cir. 2001)) (internal quotation marks omitted).

3        To determine whether an officer had probable cause at the time of an arrest, the Court

4  considers "'whether at that moment the facts and circumstances within [the Officers'] knowledge

5  . . . were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or

6  was committing an offense.'" *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 953 (9th Cir. 2010)

7  (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

8        "Although conclusive evidence of guilt is not necessary to establish probable cause,

9  'mere suspicion, common rumor, or even strong reason to suspect are not enough.'" *Id.* (quoting

10  *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir.2007) (internal quotation marks, citation,

11  and alteration omitted)). "Generally, officers need not have probable cause for every element of

12  the offense, but they must have probable cause for specific intent when it is a required element."

13  *Id.*

14                  **b.  Parties' Evidence**

15        Here, defendant Stevens claims that on November 1, 2017, he received a report that the

16  Clark County District Court Clerk's Office had received an envelope from plaintiff containing a

17  suspicious orange powder.  Dkt. 32, at 2.  Stevens reviewed the contents of the envelope.  Dkt.

18  32, at 2.  This included plaintiff's handwritten note that he felt he was being extorted and that he

19  was giving Clark County "a final opportunity to return my hard earned money[.]  Your deadline

20  is 11-08-2017 1500 hrs."  Dkt. 32-2, at 1.

21        Defendant Stevens also spoke with the employee who had contacted plaintiff about the

22  envelope.  Dkt. 32, at 2.  She told him that plaintiff had later told her that the powder was a

23  harmless mixture of spices but that during their conversation, plaintiff's demeanor was

24

1  "apologizing one minute and then yelling and swearing at her the next."  Dkt. 32, at 2–3.

2  Defendant Stevens states that he believed he had probable cause to arrest plaintiff for

3  intimidating a public servant regardless of whether the powder was harmless because the

4  envelope would cause a public servant to feel threatened or intimidated.  Dkt. 32, at 3.

5      Defendant Stevens arrested plaintiff on December 7, 2017.  Dkt. 32, at 3.  When doing

6  so, he claims that he had his firearm in the "low-ready" position.  Dkt. 32, at 3; *see also* Dkt. 31-

7  11, at 4 (explaining that "low ready" means a firearm is close to the officer's chest with the

8  barrel pointed down).

9      Defendant Stevens' report documents that he had "information that [plaintiff] was often

10  armed with knives" and was confrontational with law enforcement.  Dkt. 32-4, at 2.  Therefore,

11  Stevens called for additional units when arresting plaintiff.  Dkt. 32-4, at 2.  Plaintiff was booked

12  into jail (Dkt. 32-4, at 3), although it is undisputed that a judge later found no probable cause to

13  believe that plaintiff committed any crime.  *See* Dkt. 36-1, at 3.

14      For his part, plaintiff claims that he accidentally spilled the spices from his pre-workout

15  drink into the envelope and that defendant Stevens pointed his weapon at plaintiff during the

16  arrest.  Dkt. 31-1, at 24.

17          **c.  Discussion**

18      RCW 9A.76.180(1) criminalizes intimidation of a public servant, which occurs when "by

19  use of a threat, [a person] attempts to influence a public servant's . . . official action as a public

20  servant."  Plaintiff asserts that defendants lacked probable cause that plaintiff made a threat and

21  that he did so with the requisite "purpose of influencing a public servant's official action."  Dkt.

22  36, at 40; *see also State v. Montano*, 169 Wn.2d 872, 876 (2010) (setting forth elements of the

23  crime).

24

AMENDED REPORT AND RECOMMENDATION - 19

First, regarding probable cause of intent, under Washington law, there must be something more than merely the threats themselves or a person's generalized anger at the circumstances to show the requisite intent to influence a public servant's action. *Id.* at 877. *But see State v. Kalachik*, 186 Wn. App. 1030, 2015 WL 1228732, at *2 (March 17, 2015) (distinguishing *Montano* where there was some evidence linking the defendant's behavior to an official action that the defendant wished to influence because, among other things, the threats included statements clearly intended to dissuade the public servant's actions).

Here, there is no genuine issue of material fact that the envelope included a suspicious looking (if harmless) powder and that plaintiff's note included a deadline for government employees to return his money. A reasonable person could well conclude that plaintiff wrote the letter and included the powder in an effort to intimidate the public servant who received the letter into returning his money, rather than taking the check. Plaintiff argues that by "immediately" apologizing to the employee who called him, explaining that the powder was harmless, and paying the fine (Dkt. 36, at 41) he showed that he did not intend to threaten or harm anyone. However, a reasonable officer in defendant Stevens' position could well have concluded that plaintiff meant to threaten a public servant and concocted the story about accidentally spilling the powder in the envelope to avoid arrest.

Plaintiff also argues that the envelope and its contents could not reasonably be interpreted as a threat. *See* Dkt. 36, at 40. Plaintiff points out that during defendant Stevens' deposition testimony, Stevens stated that he did not believe plaintiff's actions conveyed a threat as defined in RCW 9A.04.110, which sets forth definitions of "threats" that are incorporated into RCW 9A.76.180 by reference. *See* RCW 9A.76.180(2)(b).

AMENDED REPORT AND RECOMMENDATION - 20

1    For two reasons, the Court finds that this argument fails to create a genuine issue of

2    material fact.  First, regardless of Stevens' subjective interpretation of the legal consequences of

3    Klug's actions, the court examines what conclusions a prudent officer could have reasonably

4    drawn based on the facts and circumstances at the time.  Again, the probable cause inquiry is

5    objective—not subjective.  *Nieves*, 139 S. Ct. at 1725.  A reasonable officer could certainly have

6    concluded that a letter with a suspicious looking powder and a "final opportunity" to return

7    plaintiff's money—including the very hour of the day when the deadline would expire—was

8    intended to indirectly communicate the intent to cause bodily injury "to the person threatened or

9    to any other person."  *See* RCW 9A.04.110(28)(a).

10    Second, plaintiff's characterization of Stevens' deposition testimony as "admit[ing] that

11    he had no evidence of any threat as defined in RCW 9A.76.180 or RCW 9A.04.110" is

12    inaccurate.  *See* Dkt. 36, at 40.  Plaintiff cites to the following exchange:

13    Q. Do you believe Miss DeWitz was the first person to open the letter?
      A. [Stevens:] I don't know.
14    Q. Did Miss DeWitz tell you if she was the person to open the letter?
      A. No.
15    Q. Do you have -- let me start over.  At the time that you arrested Mr. Klug, did
      you have any evidence that Mr. Klug threatened to cause bodily injury to Miss
16    DeWitz?
      A. No, there was no threat of bodily injury to Miss DeWitz.

17

18    Dkt. 36-2, at 186.  This questioning appears to refer to RCW 9A.04.110(28)(a), defining a

19    "threat" as the direct or indirect communication of the intent to "cause bodily injury in the future

20    to the person threatened or to any other person."  But, as posed, the questioning focuses on

21    whether Stevens believed there was an intent to threaten Ms. DeWitz (an employee at the court),

22    in particular, rather than an intent directed toward whoever opened the envelope and would be

23    processing plaintiff's check.  In the Court's view, the crux of this issue is that plaintiff's actions

24

1   could reasonably be interpreted as an implicit threat of harm to whoever opened his envelope and

2   processed his check.  Nor do factual issues arise because a judge subsequently directed dismissal

3   of the charges against plaintiff.  *See Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990)

4   ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of

5   no consequence in determining the validity of the arrest itself."); *Curry v. Hanks*, No. CV 13-

6   00517-CG-B, 2016 WL 777796, at *6 (S.D. Ala. Feb. 2, 2016) (applying the same analysis

7   where charges were dismissed after arrest), *report and recommendation adopted*, No. CV 13-

8   0517-CG-B, 2016 WL 814940 (S.D. Ala. Feb. 29, 2016).

9          In short, based on the facts viewed in the light most favorable to plaintiff, including the

10  undisputed facts regarding the contents of the envelope, Stevens had probable cause to arrest

11  plaintiff for intimidating a public officer.  The Court turns to whether defendant Stevens used

12  excessive force when arresting plaintiff.

13                              **2.  Fourth Amendment:  Excessive Force**

14         When examining whether plaintiff's claim that defendant Stevens used excessive force

15  can survive summary judgment, the Court focuses on the second qualified immunity prong—

16  whether viewing the facts in the light most favorable to plaintiff, Stevens' actions in arresting

17  plaintiff violated clearly established law.

18         Here, plaintiff states that Stevens pointed his gun directly at plaintiff's chest while

19  effecting his arrest.  *See* Dkt. 36-1, at 3.  It is uncontroverted, however, that Stevens was aware

20  that there was a "be on the lookout" notice regarding plaintiff and that defendant Stevens knew

21  that plaintiff was often armed with knives and had been categorized as hostile toward law

22  enforcement.  Dkt. 32, at 4; Dkt. 32-4, at 2.  It is also undisputed that Stevens knew that

23

24

1   plaintiff's letter to the Court referred to Jack Phane's citation as "hostile and terrorist"

2   "extortion" and appeared to refer to police as "terrorist thugs."  Dkt. 32-2, at 1.

3        It is a plaintiff's burden to establish that a right allegedly violated was clearly established

4   at the time of the violation.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  Even

5   taking the facts in the light most favorable to plaintiff, in 2017, an officer who was aware of

6   those facts did not violate clearly established law by pointing a firearm at an arrestee who

7   presented such a threat.

8        Clearly established law in the Ninth Circuit held that drawing guns on an arrestee could

9   be considered excessive force when there was no reason to believe that the arrestee was armed or

10   dangerous.  *See Hopkins v. Bonvicino*, 573 F.3d 752, 777 (9th Cir. 2009) (violation of clearly

11   established law for officers to enter home to make arrest, with guns drawn, where officer stated

12   that he knew arrestee was not a threat to officer safety); *Sandoval v. Las Vegas Metro. Police*

13   *Dep't*, 756 F.3d 1154, 1165 (9th Cir. 2014) (violation of clearly established law to point guns at

14   unarmed teenagers' heads); *Tekle v. United States*, 511 F.3d 839, 847 (9th Cir. 2007) (violation

15   of clearly established law to hold guns to the head of a child who complied with instructions and

16   posed no immediate threat to officers' safety).  Plaintiff has failed to show that it was clearly

17   established at the time of his arrest that it was unlawful to point a firearm at an arrestee who was

18   known to be hostile toward law enforcement and generally armed with knives.  Qualified

19   immunity shields defendant Stevens from such liability.

20                     **3.  First Amendment**

21        Plaintiff also alleges that defendant Stevens violated plaintiff's First Amendment rights

22   because Stevens arrested plaintiff in retaliation for plaintiff's protected speech.  *See* Dkt. 5, at 22.

23

24

1    In support of this claim, plaintiff relies on his argument that Stevens lacked probable cause to

2    arrest plaintiff.  *See* Dkt. 36, at 41.

3            The existence of probable cause defeats a retaliatory arrest claim absent facts not argued

4    here.  In *Nieves*, the Supreme Court squarely addressed this issue, holding that "[a]bsent . . . a

5    showing [that there was no probable cause for the arrest], a retaliatory arrest claim [under the

6    First Amendment] fails."  139 S. Ct. at 1725.  The Court noted that the only exception from this

7    argument is "where officers have probable cause to make arrests, but typically exercise their

8    discretion not to do so."  *Id.* at 1727.  But plaintiff does not argue that he has introduced evidence

9    from which a trier of fact could find that Clark County officers typically exercise their discretion

10   in similar circumstances not to arrest those suspected of such actions.  *See* Dkt. 36, at 40–41.

11           Further, and as noted above, the Court finds that the facts—viewed in plaintiff's favor—

12   establish probable cause for plaintiff's arrest.  As noted, the existence of probable cause

13   generally defeats a retaliatory arrest claim.  *See Nieves*, 139 S. Ct. at 1727.  In *Nieves*, the Court

14   explained that standing alone, the subjective animus of an officer is not enough—the *Nieves*

15   Court reasoned that to hold otherwise would undermine the purely objective inquiry under the

16   Fourth Amendment.  *Id.* at 1724; *see also id.* at 1722 ("It is not enough to show that an official

17   acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the

18   injury.").

19           Because plaintiff fails to meet *Nieves*' threshold showing of a lack of probable cause for

20   his arrest, his retaliatory arrest claim against Stevens should be dismissed with prejudice.

21                        **4. Fourteenth Amendment (*Brady* Claim)**

22           Plaintiff alleges that defendant Stevens failed to disclose material exculpatory evidence to

23   plaintiff's defense.  Dkt. 5, at 32.  The evidence purportedly withheld is "the fact that [defendant

24

1    Stevens] knew that the FBI had analyzed the powder in the letter and envelope sent by [plaintiff]

2    and had found that the substance was not toxic."  Dkt. 5, at 23.  Plaintiff does not address

3    defendants' arguments in the summary judgment motion on this point.  *See generally* Dkt. 36.

4         The State's suppression of material favorable evidence during a prosecution can violate

5    the Fourteenth Amendment.  *See Brady v. Maryland*, 373 U.S. 83, 86 (1963).  Evidence is

6    "material" only if "there is a reasonable probability that, had the evidence been disclosed, the

7    result of the [criminal] proceeding would have been different."  *Cone v. Bell*, 556 U.S. 449, 470

8    (2009).  Here, there is no dispute that the charges against plaintiff were dismissed and he was not

9    convicted of any crime related to the suspicious-looking powder.  Therefore, he cannot show that

10   the outcome of the proceeding would have differed had defendant Stevens included the FBI's

11   analysis in the probable cause affidavit.

12        Plaintiff's claim against defendant Stevens for failing to disclose evidence should be

13   dismissed with prejudice.  *See also Forte v. Cty.*, No. 1:15-CV-0147 DAD-BAM, 2016 WL

14   4247950, at *5 (E.D. Cal. Aug. 11, 2016), *report and recommendation adopted*, No.

15   115CV00147DADBAM, 2016 WL 6599747 (E.D. Cal. Nov. 7, 2016), *aff'd*, 698 F. App'x 554

16   (9th Cir. 2017).

17            **D.  Defendant Atkins and Defendant Clark County**

18        Plaintiff brings a claim under *Monell v. Department of Social Services. of City of New*

19   *York*, 436 U.S. 658 (1978), against defendants Clark County and Atkins, as the "chief policy

20   officer and decision maker for the Clark County Sheriff's Office."  Dkt. 5, at 33.  Plaintiff

21   alleges that these two defendants are liable because they failed to properly train Clark County

22   police officers and because defendant Atkins was aware of Stevens' allegedly unconstitutional

23   arrest of plaintiff yet ratified Stevens' conduct.  *See* Dkt. 5, at 33–34.  Again, plaintiff does not

24

1    address defendants' arguments regarding these claims in their summary judgment motion.  *See*

2    Dkt. 36.

3          *Monell* allows for municipalities and municipal officials to be sued for damages on the

4    basis of civil rights deprivations by their subordinates, where a municipal custom or policy was

5    the moving force behind the violations.  *See* 436 U.S. at 690–91.  However, a claim against a

6    municipality or municipal official under *Monell* cannot succeed if a plaintiff fails to establish the

7    underlying constitutional deprivation.  *Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020).

8          Plaintiff's *Monell* claim against defendants Clark County and Atkins relies solely on his

9    claim that defendant Stevens unconstitutionally arrested him.  *See* Dkt. 5, at 33–34.  But the

10   Court finds that even viewing the facts in the light most favorable to plaintiff, defendant Stevens

11   did not violate plaintiff's constitutional rights.  Therefore, the claims against defendants Atkins

12   and the County should also be dismissed with prejudice.

13    **III.  State Law Claims**

14          Plaintiff also brings claims against defendants Phane, Brown, and Stevens for damages

15   for the state-law torts of false imprisonment and arrest and outrage.  *See* Dkt. 5, at 34–35.

16          The Court recommends that the District Court exercise its discretion to dismiss the

17   remaining state law claims against Stevens and Phane without prejudice because all federal

18   claims against these two defendants should be dismissed.  *See* 28 U.S.C. § 1367(c).

19          Alternatively, the District Court should find that plaintiff has failed to create a genuine

20   issue of material fact regarding whether Phane had a reasonable suspicion to stop plaintiff and

21   probable cause to issue the traffic citation.  *See Whren v. United States*, 517 U.S. 806, 813

22   (1996).  It is clear from photographs of plaintiff's vehicle taken by defendant Phane at the time

23   of the stop that from certain angles, plaintiff's license plate could not be fully read.  *See* Dkt. 35-

24

2, at 1–2; *Scott v. Harris*, 550 U.S. 372 (2007).  Therefore there was probable cause to infract

plaintiff for violating RCW 46.16A.200(5)(A)(iii), which requires that a license plate be "able to

be plainly seen and read at all times"—that is, including from all angles.  *See State v. McCue*,

119 Wn. App. 1039, 2003 WL 22847338 (Dec. 2, 2003) (citing former RCW 46.16.240); *see*

*also Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir.

2003).  Similarly, as discussed at length above, defendant Stevens had probable cause to arrest

plaintiff.  Because the arrest, traffic stop, and citation were legally valid, plaintiff cannot prevail

on his false arrest and imprisonment claims against defendants Stevens and Phane.  *See*

*McKinney v. City of Tukwila*, 103 Wn. App. 391, 408 (2000) (affirming dismissal of false arrest

claim related to a *Terry* stop where, among other things, the officers reasonably initiated the

stop); *McBride v. Walla Walla Cty.*, 95 Wn. App. 33, 38 (1999), *as amended*, 990 P.2d 967

("The existence of probable cause is a complete defense to an action for false arrest, false

imprisonment, or malicious prosecution."); *see also Secker v. King Cty.*, 86 Wn. App. 1018,

1997 WL 259262, at *2–*3 (1997) (noting that although the State dismissed charges against a

plaintiff, establishing a *prima facie* case of lack of probable cause, the uncontroverted evidence

was sufficient to establish probable cause and affirming summary judgment).

Similarly, if the District Court reaches the merits of plaintiff's outrage claims against

defendants Phane and Stevens, summary judgment dismissal of those claims should be granted.

Courts in Washington State have upheld the dismissal of outrage claims premised on an arrest

where the facts have shown that there was probable cause for the arrest.  In *Guffey v. State*, for

instance, the Washington State Supreme Court affirmed the dismissal of an outrage claim

brought against a state patrol trooper who arrested a driver at gunpoint based on the mistaken

belief that the driver was a wanted felon.  103 Wn. 2d 144, 146 (1984), *overruled on other*

1   *grounds as stated in Savage v. State*, 127 Wn. 2d 434 (1995); *see also McCarthy v. Cty. of Clark*,

2   193 Wn. App. 314 (2016) (published in part) (affirming summary judgment dismissal of outrage

3   claim against an officer who relied on a later-retracted report).  Based on this authority, plaintiff

4   cannot show as a matter of law that he can prevail on his outrage claims against defendants

5   Phane and Stevens, where there was reasonable suspicion to stop his vehicle and probable cause

6   to issue a citation and arrest plaintiff.

7        The Court recommends denying the summary judgment motion, however, inasmuch as

8   defendants seek dismissal of state law claims against defendant Brown.  As a preliminary matter,

9   defendants cite to *Nolan v. Snohomish County*, 59 Wn. App. 876 (1990), as authority that Clark

10  County, not defendant Brown, is the only appropriate defendant for this claim.  *See* Dkt. 30, at

11  50.  *Nolan* held that a county, not a county council, was the appropriate defendant in a legal

12  action involving a county.  *Id.* at 883.  But plaintiff is not suing a government body, and *Nolan*'s

13  analysis of whether a county council was a separately legal entity from the county does not

14  appear to apply here.  *See also Broyles v. Thurston Cty.,* 147 Wash. App. 409, 428 & n.5 (2008)

15  (noting that a county—not a prosecutor's office—was liable under *Nolan*, yet that the prosecutor

16  or his deputies could still be personally liable).

17       Defendants alternatively argue that plaintiff's account of the facts does not "come

18  anywhere close to the standard needed to prove outrage."  Dkt. 30, at 51.  Plaintiff does not

19  respond to this argument.  *See* Dkt. 36.  To prevail on a claim for the tort of outrage,

20       a plaintiff must prove that (1) the defendant engaged in extreme and outrageous
         conduct, (2) the defendant intentionally or recklessly inflicted emotional distress
21       on the plaintiff, and (3) the conduct actually resulted in severe emotional distress
         to the plaintiff. *Kloepfel v. Bokor,* 149 W[n].2d 192, 195 [] (2003). "Any claim of
22       outrage must be predicated on behavior 'so outrageous in character, and so
         extreme in degree, as to go beyond all possible bounds of decency, and to be
23       regarded as atrocious, and utterly intolerable in a civilized community.'" *Strong v.
         Terrell,* 147 W[n]. App. 376, 385–86 [] (2008). . . .

24

1

2

3

> The elements of outrage generally are factual questions for the jury. . . . However, a trial court faced with a summary judgment motion must "make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury." [Citation omitted.]

4 *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 869 (2014).

5        The Court declines to recommend dismissal of plaintiff's outrage claim against defendant

6 Brown.  Defendants come forward with no authority discussing whether Washington State courts

7 have dismissed outrage claims as a matter of law under similar circumstances.  The Court

8 therefore finds that whether defendant Brown's actions constituted the tort of outrage is an issue

9 not amenable to resolution by this summary judgment motion.

10        All state law claims, except those against Brown, should therefore be dismissed without

11 prejudice.

12                                  **CONCLUSION**

13        Defendants' summary judgment motion (Dkt. 30) should be granted in part and denied in

14 part.  All claims against defendants Phane, Stevens, Atkins, and Clark County should be

15 dismissed, and these defendants should be terminated from this action.  The dismissal of these

16 claims should be with prejudice—except that the dismissal of the claims against Phane and the

17 state law claims should be without prejudice.  However, no claims against defendant Brown

18 should be dismissed.

19        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

20 fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

21 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

22 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

23 of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

24

1    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

2    imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 19,**

3    **2021** as noted in the caption.

4        Dated this 3rd day of March, 2021.

7    _____

8    J. Richard Creatura
     United States Magistrate Judge